STATE *ex. rel* MABRY *et al. v.* ENGELHARD *et al.*

STATE on the relation of PENELOPE MABRY and others *v.* JOSEPH A. ENGELHARD and others.

In August, 1862, Confederate notes constituted the currency of the country. And a Clerk and Master, acting under an order of the Court to collect, is protected in receiving such money in payment of notes given for the purchase of land; and although he had no authority to invest the money and would have been liable for any loss arising from such investment, still, having invested the same in good faith in Confederate bonds equally as good as the currency itself, he cannot be held responsible for their loss, occurring by the results of the war.

CIVIL ACTION, upon the official bond of the defendant, submitted to, and decided by *Moore, J.,* at Spring Term, 1873, of the Superior Court of EDGECOMBE county, upon the following CASE AGREED :

The defendant had been appointed Clerk and Master in Equity in Edgecombe county, in 1860; and at Spring Term, 1861, executed his bond as such, in the penal sum of $15,000, with the other defendants as his sureties. When the defendant, Engelhard, entered on the duties of his office, there were delivered to him as Clerk and Master, certain bonds executed by B. W. Mabry, B. Mabry and others, for the purchase money of certain lands, which had been sold as the property of the heirs of Charles Mabry, deceased, by a decree of the Court of which said Engelhard was Clerk and Master, and purchased by B. W. and B. Mabry. The decree in the proceedings for said sale are herewith filed, marked A, B, &c.

In 1862 the defendant, Engelhard, was in Virginia, and left the papers of his office in the possession of Matthew Weddell, a merchant of Tarboro, a man of reliable business qualifications, to act as his agent.  B. Mabry called on Weddell, and proposed to pay a part of the aforesaid bonds.  Weddell told him he did not know what to do with the money, and could not take it until he could hear from Engelhard.  He then wrote to Engelhard, perhaps twice, before receiving an answer ; at last he did receive instructions from him to receive the money and invest it in Confederate bonds  On the 7th August, 1862, he, Weddell, received $4000 of the money in Confederate currency, credited the amount on one of the notes, and invested in Confederate bonds, at the same time investing some of his own money in like manner.  Defendant instructed Weddell to invest in Confederate bonds, as that would be convenient for re-conversion to currency, if needed.

On the 21st October, 1862, Engelhard resigned his office to Judge Heath, in vacation, and on the same day John Norfleet was appointed Clerk and Master, who gave the required bonds and qualified as such, when, by agreement between Norfleet and Weddell, the papers belonging to the Clerk and Master's office, other than the Confederate bonds aforesaid, continued to be kept in Weddell's safe.   Norfleet had been informed by Weddell, that the $4000 had been received and invested in Confederate securities, and  that the same were in Petersburg, Va., in the hands of Mr. James Weddell, for safe keeping, and that he, Norfleet, could get them, whenever he desired to do so.   The bonds remained in Petersburg until the close of the war, no one during the time applying for them.  Neither Weddell or Engelhard gave any notice to the person entitled to the money, of the purpose to invest the same in Confederate bonds.

The parties entitled to the money are the relators, Penolpe Mabry, the widow of Charles Mabry, B. Mabry and B. W. Mabry, (the purchasers of the land,) Virginia Mabry, Susan F. Pippin, Louisa Savage, Francis E. C——, Mary A. C——, and Delia F. Gorham, the intestate of the relator, John C.

Gorham, and Charles D. Mabry, the testator of the relator, Blount Bryan, who were the heirs of Charles Mabry.

Previous to the resignation of Engelhard and the appointment of Norfleet, sometime in October, 1862, Penelope Mabry, one of the relators, applied to Norfleet to get her share of the money, and was told by him what he had been informed, that the money had been invested in Confederate bonds, and left with Weddell. Norfleet also told her that as the money had been so invested, perhaps it would be better for those interested in the fund; for if the Confederacy was successful, she would get 8 *per cent.* on the money, a good interest. To this she replied, that she wanted her money.

No application was ever made to Engelhard or Weddell for the money by any of the parties entitled, or to Norfleet, except as before stated. No notice was ever given by Norfleet to either Engelhard or Weddell of the application, or the money was wanted or needed; and no motion was ever made in Court about, or exception taken to, the investment, until after the close of the war, except the decree rescinding or modifying the order of collection, made on motion of counsel.

(The case agreed here sets out the ages, residence, &c., of the several relators, and the amounts to which each are entitled. These facts not bearing upon the point decided in this Court, are not inserted.)

If the Court should be of opinion, that the relators are entitled to recover the full amount of the fund invested, the judgment shall be rendered in their favor for $4,060.68.

If the Court should be of opinion, that the relators are entitled to recover, but that the scale of damages is the difference in value between the money invested, and the value of the same at the time the defendant, Engelhard, went out of office, then it is agreed that the Court may assess the damages and give judgment accordingly; otherwise there shall be a judgment of non suit.

The Court being of opinion with the defendants, gave judg-

ment dismissing the action, and against the relators for costs ; from which they appealed to this Court.

*Moore & Gatling,* counsel for appellants.

*Smith & Strong,* contra, submitted the following argument :

I. Had the funds remained uninvested after collection, they would have been lost, and if liable the defendant is irresponsible either for collecting at all or for collecting in Confederate funds.

II. The defendant was acting under an order of the Court to collect, and could not be responsible for obeying its mandate.

III. Nor was he liable for accepting payment in Confederate currency, as at that time this was the only currency in general use.

I. An officer with authority to collect, (and the officer was a Clerk and Master) might, before 1863, properly received Confederate notes in payment of debts contracted before the war. *Emerson* v. *Mallett,* Phil. Eq. 234.

II. Trustees, who have had funds to manage during the war, belonging to infants, or others, were bound to use such care as prudent men exercised in their own affairs. *Cummings* v. *Mebane,* 68 N. C. R. 315, as in our case Mr. Weddell used as to his.

III. A collecting officer may receive whatever currency passes among prudent business men, and the debtor may pay. A Clerk and Master in 1863 received Confederate currency in payment of purchase money due lands sold in 1858, and his liability is to be tested of the principle thus laid down. *Baird* v. *Hall,* 67 N. C. R. 230.

IV. Nor was the investment in Confederate bonds a proper ground for charging defendant.

A guardian who collected in Confederate currency, under such circumstances as warranted him in doing so, may invest in Confederate bonds. *Sudderth* v. *McCombs,* 65 N. C. Rep. 186.

Indeed it was his duty to make an effort to invest or put at interest for benefit of *cestus que use.* *Whitfield* v. *Foy*, 65 N. C. R. 265.

And he might render himself liable for neglecting to do so. *Shipp* v. *Hettrick*, 63 N. C. R. 329.

Our case comes fully within the principle in these and other cases enunciated, and the bond was not liable for the loss sustained.

PEARSON, C. J. We concur with his Honor in the opinion that the facts set out in the case agreed, do not warrant the legal inference of a want of due diligence on the part of the defendant, Engelhard, as to collecting in Confederate notes in 1862. The bonds in the hands of Engelhard as Clerk and Master were due and the obligors had a right to make the payment, and when they insisted upon this right the duty of refusing to accept Confederate notes and taking upon himself the odium of doing so, was not imposed by law upon the defendant. In August, 1862, Confederate notes constituted the currency of the country, and were but slightly depreciated, and the order of collection was in force. So there was no ground upon which the defendant could have refused to accept payment, when the obligors insisted on their right to pay off the bonds.

As to investing in Confederate bonds: The Clerk and Master was not authorized to invest the fund collected by him. His duty was to hold it and make return to the next term of the Court, or pay it to such of the parties as applied for their shares. So if any loss had resulted from this unauthorized conversion of the fund, he would have been liable, but the fact is, the Confederate bonds were just as good as the Confederate notes, and the fund was benefitted by the interest on the bonds. Had the defendant used the Confederate notes or mixed them with his own money and afterwards bought up Confederate bonds to supply the place of the converted fund, it would have materially altered the case, and might have led to the inference

of want of *bona fides*, but such an inference is rebutted by the fact, that his agent who received the Confederate notes, was directed to invest in Confederate bonds, which was done at the time the notes were received.

No error.

PER CURIAM.                                        Judgment affirmed.